FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2013 AUG 16  P 5: 02

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| MISTI BATTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. 1:13 cv 1017 |
| v. | ) CMH/TCB |
| | ) **JURY TRIAL DEMANDED** |
| CITY OF ALEXANDRIA, | ) |
| a municipal corporation organized under the | ) |
| laws of the Commonwealth of Virginia, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| SERVE: | ) |
| | ) |
| WILLIAM D. EUILLE, MAYOR | ) |
| CITY OF ALEXANDRIA | ) |
| 301 King Street, Room 2300 | ) |
| Alexandria, Virginia 22314 | ) |
| | ) |
| JAMES BANKS, JR., ESQUIRE | ) |
| ALEXANDRIA CITY ATTORNEY | ) |
| 301 King Street, Room 1300 | ) |
| Alexandria, Virginia 22314 | ) |
| | ) |
| EARL L. COOK, CHIEF | ) |
| POLICE DEPARTMENT | ) |
| CITY OF ALEXANDRIA | ) |
| 3600 Wheeler Avenue | ) |
| Alexandria, Virginia 22304 | ) |

**COMPLAINT**

1.      Plaintiff Misti Battle (Plaintiff or Battle) brings this action for damages based on retaliation and the interference of her rights under the federal Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.,* and for gender discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

2.     Defendant City of Alexandria (Defendant or City), unlawfully retaliated against Battle, interfered with the exercise of her rights under the FMLA, and discriminated against Battle on the basis of her gender, in violation of Title VII.

## JURISDICTION AND VENUE

3.     This case arises under the FMLA, 29 U.S.C. § 2601 *et seq.,* and Title VII, 42 U.S.C. § 2000e *et seq.*

4.     This Court has jurisdiction over this action under 28 U.S.C. § 1331, Title VII, 42 U.S.C. § 2000e-5 and the federal Family and Medical Leave Act, 29 U.S.C. § 2617.

5.     Venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391 because the events or omission giving rise to these claims occurred in the Eastern District of Virginia.

## PARTIES

6.     Plaintiff Misti Battle was at all times relevant to this cause of action a resident of the Commonwealth of Virginia and a law enforcement officer for the City of Alexandria Police Department.

7.     Defendant City of Alexandria is a municipal corporation organized under the laws of the Commonwealth of Virginia. The City of Alexandria Police Department is located at 3600 Wheeler Avenue, Alexandria, Virginia 22304. At all times relevant to this cause of action, Defendant was (and currently is) Battle's employer.

## FACTS

8.     Battle was hired by Defendant on December 4, 2004, as a Police Officer I. Battle performed well for Defendant, consistently receiving exemplary performance evaluations. On January 8, 2011, Battle was promoted to Sergeant.

9.      Battle was placed on a 12-month probationary status following her promotion, pursuant to the City of Alexandria's Administrative Regulation 6-8. A.R. 6-8 provides that all regular full-time employees serve a 12-month probationary period following a promotion.

10.      For the first six months following her promotion, Battle continued to receive favorable performance reviews while working under the supervision of Lieutenant Bartlett. For her April 2011 evaluation, she received an "Exceeds Expectations" in the categories of "Quality of Work," "Reliability," and "Responsibility." Regarding Reliability, Lieutenant wrote that Battle "is never absent on unscheduled leave...[she] is more conscientious than the average worker." For her May 2011 evaluation by Lieutenant Bartlett, she received "Meets" or "Exceeds" expectations in all performance categories. Lieutenant Bartlett never brought up the issue of leave taken by Battle, even when Battle took one week of leave in order to move.

11.      In June 2011, Battle came under the supervision of Lieutenant Shirl Mammarella when Battle transferred to work the night shift. For the first two months following this transfer, Battle continued to work successfully in her new position.

12.      On August 11, 2011, Battle informed Lt. Mammarella that she needed to take leave due to her husband needing medical treatment for a hernia. The preceding day, Battle had advised Sergeant Brown of the situation with her husband's medical condition.

13.      On August 19, 2011, Lt. Mammarella told Battle that her leave balances were too low for someone with her "amount of time on." At that time, Battle had accumulated approximately 40-50 hours of annual leave, 100 hours of sick leave, and a minimal amount of compensatory time, due to the fact that she had been detailed for three years as an instructor at the Police Academy. During that three-year period, Battle was not able to accumulate compensatory time because of not being able to make court appearances or to work holidays.

-3-

Neither Defendant nor the Police Department have regulations or guidelines that set forth a recommended or minimum number of leave hours that employees should accumulated. At no time during her employment with Defendant has Battle gone into a leave without pay status.

14.     During this same meeting with Lt. Mammarella on August 19, 2011, Battle confirmed with Lt. Mammarella that she intended to take leave due to her husband's requiring emergency hernia surgery, which was to take place on August 22, 2011.   Battle told Lt. Mammarella she would be out of work for several days.

15.     Because of the emergency nature of her husband's surgery, Battle immediately made arrangements to have other officers cover her normal shifts. Battle was out on leave from August 21, 2011 through September 1, 2011.

16.     At no time did Defendant inform Battle of her right to take leave under the FMLA. Because Battle did not know of her right to take FMLA leave, she was put in the difficult position of trying to balance the prior commitments she had made to the Police Department to work overtime with the need to take care of her ailing husband. As a result, during the period of time she was out on leave, Battle went ahead and worked many of the overtime shifts she had previously signed up for.  This is in derogation of the City's own Administrative Regulations, which provide that, "[w]hile on full-time FMLA leave, City employees are not eligible, *nor can they be required, to work overtime assignments....*" A.R. 6-18 (emphasis added). Being required to work the overtime assignments—while caring for her husband after an emergency hernia surgery—caused Battle additional, undue stress and anxiety.

17.     Battle returned to work on September 2, 2011. Despite having taken some leave to take care of her husband, Battle still maintained positive leave balances in all categories.

- 4 -

18.     Five days later, Lt. Mammarella gave Battle her nine-month progress review. Lt. Mammarella rated Battle as "Below Requirements" for "Reliability" and "Responsibility." Under "Reliability," Lt. Mammarella noted that Battle's leave balances were "seriously low," though she still had 19 hours of annual leave, 19 hours of sick leave, and less than one hour of compensatory time. During all the years of service Battle had with the Alexandria Police Department, she was never told that she needed to maintain a minimum number of hours in any leave category. Nor is Battle aware of any City of Alexandria Administrative Regulation or Police Directive requiring employees to maintain minimum leave balances.

19.     At the end of Lt. Mammarella's written report to Battle, she again criticized Battle for her leave usage, stating the following:

> Her routine absences have impacted her ratings in nearly every category. When asked, she offered no explanation for her deterioration of performance. Sergeant Battle needs to take her assignment as a sergeant seriously and make it her highest priority in order to improve. She needs to be present during her normal work hours for her officers. She needs to increase her leave balances....

20.     Despite Lt. Mammarella's concerns about the amount of leave Battle was taking, Lt. Mammarella had signed off on every leave request for Battle, thereby signifying her approval of the same. Even though it is the policy of the Alexandria Police Department for supervisors to conduct planning sessions with the employees who are new to their command, at no time did Lt. Mammarella ever conduct such a planning session with Battle.

21.     At the September 7, 2011 meeting with Battle, Lt. Mammarella advised Battle that she needed to limit the amount of leave she used and work on building up her leave balances. Lt. Mammarella did not provide Battle with a target number of leave hours she should accrue.

22.     On November 17, 2011, Lt. Mammarella orally reprimanded Battle for having low leave balances. Between September 7, 2011 and November 17, 2011, Battle took only three days of leave, one of which was for a family emergency. Battle told Lt. Mammarella that she intended to use her leave if her children became sick or had extra-curricular activities they wanted her to attend. Lt. Mammarella informed Battle that she intended to recommend a 90-day extension of her probationary period.

23.     Lt. Mammarella wrote a memorandum to the Chief of Police on November 30, 2011, recommending the 90-day extension of her probationary period. Lt. Mammarella wrote the following in this memorandum:

> Sergeant Battle respectfully told me that if she had leave she was going to use it because she would not sacrifice time with her family. She said her family comes first. I acknowledged that family should come first, but I pointed out that she works many hours of overtime on her days off during evening and weekend hours so that did not seem like a valid argument.

24.     On December 14, 2011, Battle received her performance evaluation, at which Deputy Chief Hassan Aden recommended that Battle be demoted and returned to the position she held prior to being promoted to sergeant, a Police Officer II. In support of his decision to demote Battle, Deputy Chief Aden cited to the "Below Requirements" ratings Lt. Mammarella gave her in the categories of "Quality of Work," "Responsibility," and "Reliability."

25.     Deputy Chief Aden memorialized this demotion in writing on December 20, 2011, in which he also informed Battle that the demotion was not grieveable because it was not disciplinary in nature under City Administrative Regulation 6-8. The effective date of the demotion was December 14, 2011.

26.     Battle submitted her "Evaluation Dispute" Memorandum to Cheryl Orr, Director of Personnel Services for the City of Alexandria, on January 3, 2012. Battle presented

information that rebutted the low ratings given her performance by Lt. Mammarella. In the "Reliability" category, Lt. Mammarella gave Battle an "Unsatisfactory" rating, which is defined by the Alexandria Police Department as: "Unreliable. Cannot be counted on to show up for work or to finish work on time." Lt. Mammarella began her discussion by addressing Battle's leave balances, which again she referred to as being "seriously low." Lt. Mammarella stated that Battle "did not have appropriate amounts of leave for an employee with [her] time on." Lt. Mammarella did not cite to any Alexandria Police Department Directives or City Administrative Regulations that require a certain minimum number of hours to be maintained as leave balances.

27.     For a one-year period (January 2011 to January 2012), Battle took 287.5 hours of combined leave, which included the 40-plus hours of sick leave she took in order to care for her husband following his hernia surgery. This is consistent with the leave taken by other sergeants, and was even less leave taken than some other sergeants whom Lt. Mammarella supervises. For example, Sergeant Robert Smith—who was promoted to Sergeant on the same day as Battle— had been out on extended paternity leave, then vacation, during the 12-month probationary period following his promotion. He was promoted to full sergeant status with no mention of the significant amount of leave he had taken.

28.     Lt. Mammarella further said that most of the leave taken by Battle was either same-day or short-notice leave. Because of the emergency nature of her husband's hernia surgery, Battle was only able to provide two days' notice of her need for leave to take care of him. City Administrative Regulation 6-18 provides that, "[i]f the need for leave is not foreseeable, the employee shall give as much notice as is practicable, or at least one or two business days." Battle complied with this requirement when she provided two-days notice.

Further, from September 7, 2011 to November 17, 2011, Battle took three days of leave, only one of which was on short-notice, as it was necessitated by a family emergency.

29.     Lt. Mammarella also criticized Battle for taking leave from her regular shift in order to work overtime. The only time this happened was when Battle—because Defendant did not inform her of her right to take FMLA leave—went ahead and worked many of the overtime shifts while she was out on leave. Battle worked the overtime shifts in an effort to minimize the disruption to other officers' schedules that her unforeseen leave would cause and because Battle believed she was required to work the shifts she had signed-up for.

30.     Battle also rebutted, in her "Evaluation Dispute," the assertion by Lt. Mammarella that Battle supposedly did not finish work on time. Lt. Mammarella referred to Battle's alleged late submission of an internal investigation. Battle contradicted this allegation by stating that the investigation was substantially delayed by the month-long military leave of the officer who was being investigated. While Battle submitted the investigation to Lt. Mammarella on time, the investigation was not forwarded up to Internal Investigations in a timely manner. Battle and Lt. Mammarella often worked conflicting schedules, which frequently caused a three to four day delay in the receipt of emails from one another.

31.     Lt. Mammarella also incorrectly singled out Battle for her "officers [being] some of the last staff members to complete the September Power DMS assignment." In fact, only one of Battle's officers appeared on this list. This officer was having problems with his email account, which Battle had been attempting to rectify. Additionally, other sergeants under Lt. Mammarella's command had two people on this list as well.

32.     Lt. Mammarella also unfairly—and inaccurately—stated that Battle's group was the last one to complete and return a Skills Inventory Forms to Personnel and Training. Actually,

- 8 -

104 people within the department had not submitted their forms on time. This amounted to one-quarter of the department being on this list. Consequently, Battle's group was not the last one to complete the forms.

33.     In giving Battle an "Unsatisfactory" rating in the "Reliability" category, Lt. Mammarella also failed to take into account several other instances where Battle reliably performed: Battle was only one of two sergeants who responded to a request to confirm attendance at a staff meeting in November 2011; in November 2011, Battle was the only one of Lt. Mammarella's sergeants who responded to a request to come up with ideas for crime reduction in the sector for which she was responsible; in October 2011, on her day off, Battle was tasked by Lt. Mammarella with notifying her officers of a tragic suicide by another officer, which Battle did immediately; Battle took the initiative in November 2011 of having her officers distribute crime prevention flyers to residents in her sector, which action prompted Lt. Mammarella to have the other sergeants do the same.

34.     In the "Quality of Work" category, Lt. Mammarella's "Below Requirements" rating is defined by the Alexandria Police Department as: "Produces work of fair quality but which contains errors." Lt. Mammarella began her discussion in this section by noting, "Overall, Sergeant Battle's work is acceptable but will normally need correction." This statement supports a rating of "Meets Requirements," which is defined as "[w]ork is acceptable but occasionally needs to be corrected." By Lt. Mammarella's own admission, Battle should have received a "Meets Requirements" in the "Quality of Work" category.

35.     Regarding Battle's quality of work, in response to Battle's submitting a three-page investigation involving two of her officers, Lt. Mammarella noted, "Excellent follow up and documentation." Lt. Mammarella did not mention this in her evaluation of Battle's "Quality

- 9 -

of Work." Nor did Lt. Mammarella mention in her evaluation that Battle had attended only one course on conducting internal investigations. It was only after Battle submitted a "Use of Force Investigation" which Lt. Mammarella found unsatisfactory that Lt. Mammarella offered Battle a copy of a document written by Captain Dickinson giving guidance on how to write internal investigations.

36.     Similarly, Lt. Mammarella did not mention three evaluations that Battle completed, which Lt. Mammarella had deemed to be error-free.

37.     In the "Responsibility" category, Lt. Mammarella gave Battle a "Below Requirements" rating, which is defined by the Alexandria Police Department as: "[s]ometimes avoids taking a position or is unwilling to assume responsibility for decisions made." Lt. Mammarella claimed that Battle's leave usage made it so that she was not regularly available for her officers. Lt. Mammarella further claimed that Battle did not keep other sergeants informed of changes in the assignments or hours of her officers. However, Battle regularly sent emails to other sergeants about these issues. Battle also sent an email from her personal computer to another sergeant to let him know that his officer called in sick but could not reach him.

38.     Sometime in mid-November or early-December 2011, Lt. Mammarella approached two officers under Battle's supervision. She asked them about Battle's effectiveness as a supervisor, and whether they thought she responded to calls for service. Both officers told Lt. Mammarella that Battle responded when needed and she allowed them to operate effectively without micromanaging them.

39.     Lt. Mammarella also ignored the fact that Battle assumed an unpleasant position when she decided to transfer one of her officers to a different shift. Battle took this action to prevent two officers from working together because of a personality conflict that could have

jeopardized their careers. Battle's personnel decision falls into the category of "Exceeds Requirements," which is defined as, "[w]ill stand up and be accounted; accepts responsibility even for unpleasant tasks and takes full responsibility for actions."

40. Following her demotion, Battle attempted to utilize the Defendant's grievance procedure to grieve the decision. Battle stated in her Report of Grievance that her demotion was done without just cause, and that several provisions of the City's Administrative Regulations governing the grievance process were not followed. Without reaching the merits, Deputy Aden found that the matter involved the demotion of a probationary employee and was therefore not grieveable. Battle then appealed this decision to Cheryl Orr, the Alexandria City's Director of Human Resources, who denied the appeal. Battle appealed this decision to the Circuit Court of Alexandria. In June 2012, the Circuit Court upheld the City's determination that her demotion was not grieveable.

41. The Circuit Court did, however, question whether Battle continued to be on probation or not. This prompted a series of email exchanges between Heather R. Skeeles-Shiner (the Assistant City Attorney), Deputy Chief Aden, Shawn Lasher (the Personnel Division Chief), and David Delrosario, in which Mr. Delrosario stated that Battle was not on probationary status.

42. For the first six months following her demotion, Battle was told that she was on probation. Because she was under the impression she was on probation, Battle did not apply for another Sergeant position. Defendant misinformed Battle that she had to complete her most recent probationary period in order to be eligible. Additionally, Battle's Union Representative, Shaun Casey, told Battle that she could not apply for the Sergeant position because she had not successfully completed her last probationary period.

43.    There are no positions between a Police Officer and a Sergeant. Therefore, Battle was effectively precluded from re-applying for any Sergeant position due to her supposed failure to successfully complete the probationary period after her demotion.

44.    Battle's negative performance evaluation by Lt. Mammarella also prevented Battle from submitting her name on a list of eligible officers to be elevated in rank from a Police Officer II to a Police Officer III in April 2012. This is an elevation—rather than a promotion—with an increase in pay. It was not until September 2012 that Battle was informed she could have put her name on the eligibility list in April 2012. On November 8, 2012, Battle was finally given the elevation and an increase in pay was made retroactive to September 2012.

45.    Battle's nine-month and year-end evaluations by Lt. Mammarella in 2011 were the only negative performance evaluations Battle has ever received during her entire eight-plus years of service with the Alexandria Police Department.

## COUNT I: VIOLATION OF THE FMLA:
## INTERFERENCE WITH THE EXERCISE OF RIGHTS

46.    Plaintiff Battle re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

47.    Under the FMLA, an "eligible employee" is entitled to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. 29 U.S.C. § 2612(a)(1) (2013).

48.    An "eligible employee" is one "who has been employed for at least 12 months by the employer with respect to whom leave is requested…for at least 1,250 hours of service with such employer during the previous 12-month period, [and] is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a) (brackets added).

- 12 -

49.     A city or town is considered a single public agency and, therefore, a single employer for purposes of determining employee eligibility under the FMLA. 29 C.F.R. § 825.108(c)(1).

50.     As of August 19, 2011—when Battle informed Defendant that she needed to take leave to take care of her husband due to his emergency hernia surgery—Battle had been employed by Defendant for a period exceeding 12 months and had worked at least 1,250 hours for Defendant during the 12-month period preceding August 19, 2011. Defendant employs 50 or more employees within 75 miles of Battle's worksite (3600 Wheeler Avenue, Alexandria, Virginia 22304).

51.     Battle is thus an "eligible employee" for FMLA purposes.

52.     Public agencies are employers for purposes of the FMLA. A public agency is one that has taxing authority. 29 C.F.R. § 825.108(a)(b).

53.     Defendant has taxing authority and is thus a public agency and employer under the FMLA.

54.     An eligible employee may take up to 12 weeks of leave during any 12-month period in order to care for a spouse who has a serious health condition. 29 U.S.C. § 2612 (a)(1)(c).

55.     A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves inpatient care...or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

56.     "Continuing treatment" includes "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves treatment two or more times, within 30 days of the first day

of incapacity…by a health care provider…or treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider." "[T]reatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity." 29 C.F.R. § 825.115(a)(1)-(3).

57.    A "health care provider" means a "doctor of medicine or osteopathy who is authorized to practice medicine or surgery by the State in which the doctor practices, or any other person determined by the Secretary to be capable of providing health care services." 29 U.S.C. § 2611(6).

58.    A "regimen of continuing treatment" includes "a course of prescription medication (e.g., an antibiotic) or therapy requiring special treatment to resolve or alleviate the health condition." 29 C.F.R. § 825.113(c).

59.    Battle's husband had hernia surgery on August 22, 2011, and was released from the hospital that same day. Following surgery, Battle's husband was placed on prescription antibiotics for ten days and Vicodin for a period of five to seven days. He returned to see his surgeon within seven days after the surgery in order to have the wound checked. For the first four to five days after his surgery, Battle's husband was unable to walk without assistance and was on bedrest most of that time. During the period of time her husband was taking the antibiotics and Vicodin, he was unable to drive. Battle's husband's surgeon is licensed to practice medicine in the Commonwealth of Virginia.

60.    Thus, Battle's husband had a "serious health condition," as he was incapacitated for a period exceeding three consecutive, full calendar days, and he received in-person treatment by a health care provider (his surgeon) on at least one occasion (August 22, 2011 and August 29,

- 14 -

2011), which resulted in a regimen of continuing treatment under the supervision of his surgeon (course of prescription antibiotics and Vicodin).

61.     Under the FMLA, Battle was an eligible employee entitled to take up to 12 weeks of leave to take care of her husband who had a serious health condition. 29 U.S.C. § 2612(a)(1)(c).

62.     Employers must comply with the FMLA's notice requirements. These requirements include the employer's obligation to "notify the employee of the employee's eligibility to take FMLA leave within five business days" after the "employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(b).   The eligibility notice must "state whether the employee is eligible for FMLA leave." *Id.*

63.     Each time the eligibility notice is provided, the employer must also provide written notice to the employee "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." The notice must include a statement that the "leave may be designated and counted against the employee's annual FMLA leave entitlement if qualifying; ...[a]ny requirements for the employee to furnish certification of a serious health condition...; [t]he employee's right to substitute paid leave, [and] whether the employer will require the substitution of paid leave, the conditions related to any substitution, and the employee's entitlement to take unpaid FMLA leave if the employee does not meet the conditions for paid leave;...[and] [t]he employee's rights to maintenance of benefits during the FMLA leave and restoration to the same or an equivalent job upon return from FMLA leave." 29 C.F.R. § 825.300(b)-(c).

64. The employer is also required to provide a designation notice to an employee. "The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee...[W]hen the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (*e.g.*, after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances." "If the employer determines that the leave will not be designated as FMLA-qualifying (*e.g.*, if the leave is not for a reason covered by FMLA...), the employer must notify the employee of that determination. If the employer requires paid leave to be substituted for unpaid FMLA leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave." 29 U.S.C. § 825.300(d).

65. In the case of unforeseeable FMLA leave, the employee must provide notice to the employer "as soon as practicable under the facts and circumstances of the particular case." "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include...whether the employee or the employee's family member is under the continuing care of a health care provider...and the anticipated duration of the absence." "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." "The employer will be expected to obtain any additional information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying." 29 C.F.R. § 825.303(a)-(b).

66.     "In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee...whether leave is potentially FMLA-qualifying. Once the employer has acquired knowledge that the leave is being taken for a FMLA-qualifying reason, the employer must notify the employee as provided in § 825.300(d)." 29 C.F.R. § 825.301(a).

67.     "An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied. In many cases, in explaining the reasons for a request to use leave, especially when the need for the leave was unexpected or unforeseen, an employee will provide sufficient information for the employer to designate the leave as FMLA leave." 29 C.F.R. § 825.301(b).

68.     "If there is a dispute between an employer and an employee as to whether leave qualifies as FMLA leave, it should be resolved through discussions between the employee and the employer. Such discussions and the decision must be documented. If an employer does not designate leave as required by § 825.300, the employer may retroactively designate leave as FMLA leave with appropriate notice to the employee as required by § 825.300 provided that the employer's failure to timely designate leave does not cause harm or injury to the employee. In all cases where leave would qualify for FMLA protections, an employer and an employee can mutually agree that leave be retroactively designated as FMLA leave." 29 C.F.R. § 825.301(c) – (d).

69.     After Battle informed Lt. Mammarella on August 19, 2011, of her need to take leave in order to care for her husband who was having emergency hernia surgery, Defendant had

an obligation to notify Battle of her eligibility to take FMLA leave within five business days. 29 C.F.R. § 825.300(b).

70.     Defendant did not provide Battle with the required eligibility notice.

71.     At the time Defendant had an obligation to provide an eligibility notice to Battle, Defendant had the simultaneous obligation to provide written notice to Battle detailing the specific expectations and obligations of FMLA leave. This notice must provide that Battle's leave may be designated and counted against her annual FMLA leave entitlement. It must also provide whether Defendant required that she substitute her paid leave and the conditions related to that substitution. Further, the notice must indicate whether she was entitled to take unpaid FMLA leave if she did not meet the conditions for paid leave. 29 C.F.R. § 825.300(c).

72.     Defendant's Administrative Regulations provide that, "[t]he employee shall have FMLA leave charged to sick leave or disability leave...or annual leave...When all accrued leave balances are exhausted, FMLA leave shall be charged to leave without pay." Defendant was obligated to provide Battle with written notice that her FMLA leave would be charged against her sick leave and annual leave. Defendant was also required to inform Battle whether she would receive leave without pay in the event her accrued leave balances were exhausted. Defendant did not provide Battle with the rights and responsibilities notice required by 29 C.F.R. § 825.300(c).

73.     Although an employer "has the option of requiring an employee to designate vacation or other leave as FMLA leave, that option is waived if the employer fails to give proper notice of its intentions." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 300 (4th Cir. 1998). Because Defendant failed to provide Battle with notice that it required her to use annual and sick

leave as a substitute for FMLA leave, Defendant waived the right to require Battle to use her personal and sick leave as a substitute for FMLA leave.

74.     If Defendant did not have sufficient information about the reason for Battle's leave, Defendant should have made further inquiry with Battle to ascertain whether the leave was FMLA-qualifying. 29 C.F.R. § 825.301(a). Battle informed Lt. Mammarella of the reasons for her leave and the anticipated duration of her leave when she told her she was taking off several days of work in order to take care of her husband who was having an emergency hernia surgery. In so doing, Battle satisfied the employee responsibilities set forth in 29 C.F.R. § 825.301(b); 825.303(a)-(b).

75.     If Defendant continued to dispute whether Battle's leave qualified as FMLA leave, Defendant should have resolved the dispute through discussions with Battle. These discussions and the decision should have been documented. 29 C.F.R. § 825.301(c ). Defendant failed to have these discussions with Battle; consequently Defendant also failed to document any such discussions.

76.     If Defendant questioned whether Battle's husband had a serious health condition, Defendant should have requested that Battle furnish certification issued by her husband's health care provider. Defendant should have done this when Battle gave Defendant notice of her need for leave, or within five business days thereafter. 29 C.F.R. § 825.305(a)(b). Defendant's Administrative Regulations also required that Battle provide a completed "City of Alexandria Family and Medical Leave Act Medical Certification" form within 15 calendar days of Battle's request for leave.  This certification was required to include verification that Battle was needed to provide care or assistance to her husband.

77.    Defendant had the opportunity to request certification from Battle at a later time if it had reason to question the appropriateness of the leave or its duration. 29 C.F.R. § 825.304(b). Additionally, Defendant could have retroactively designated Battle's leave as FMLA leave upon providing appropriate notice to Battle as required by § 825.300, provided Defendant's failure to timely designate Battle's leave did not cause harm or injury to Battle. 29 C.F.R. § 825.301(d).

78.    Defendant failed to provide any of the required notices to Battle.   Indeed, Defendant did not provide the eligibility notice, the rights and responsibilities notice, or the designation notice. 29 C.F.R. § 825.300(b),(c), and (d). Nor did Defendant provide notice to Battle that she must substitute her annual and sick leave time for unpaid FMLA leave, or that upon exhausting her paid leave, her FMLA leave would be charged to leave without pay, in violation of 29 C.F.R. § 825.300(d).

79.    "Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). "Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b).

80.    "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. § 825.220(c).

81.    If Defendant had properly designated Battle's leave as FMLA-qualifying leave, and if Defendant had informed Battle that she would have to use her personal and sick leave as a substitute for FMLA leave, Battle could have used her annual and sick leave to care for her husband.  Furthermore, even if Battle had exhausted all of her leave and gone into a leave without pay status, FMLA regulations would have required that Defendant not count that leave

against Battle under a no-fault attendance policy. Nor could Defendant, as it has done here, used the taking of FMLA leave as a negative factor in taking employment actions against Battle. 29 C.F.R. § 825.220(c ).

82. "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits...." 29 C.F.R. § 825.214.

83. Battle suffered a loss in employment status when Defendant interfered with the exercise of her rights under the FMLA by failing to properly designate her leave as FMLA-qualifying leave. Furthermore, Defendant unlawfully considered the FMLA qualifying leave that Battle took as a negative factor in demoting her. This loss in employment status is remediable through appropriate equitable relief, such as promoting Battle back to her Sergeant position. Battle also suffered a direct monetary loss as a result of Defendant's interference, and concomitant demotion, when her annual pay was decreased. Additionally, the negative evaluation that caused Battle's demotion made her ineligible for re-applying for the Sergeant position, as well as applying for specialized units in the Police Department which could have resulted in a salary increase.

84. Accordingly, Battle was prejudiced by Defendant's interference.

85. As a direct and proximate result of Defendant's unlawful, intentional and willful actions, Battle has suffered a loss of wages.

## COUNT II: VIOLATION OF THE FMLA:
## RETALIATION

86.    Battle re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

87.    The FMLA prohibits employers from "discriminat[ing] against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2) (2013). The FMLA provides "'prescriptive' rights 'that protect employees from discrimination or retaliation for exercising their substantive rights' under the Act." *Bullock v. Kraft Foods, Inc.,* No. 3:11CV36-HEH, 2011 U.S. Dist. LEXIS 134481 at *22 (E.D. Va. Nov. 22, 2011) (internal citation omitted).

88.    Battle requested leave when she informed Lt. Mammarella of her need to take off work for several days in order to care for her husband who was having an emergency hernia surgery. It was not necessary for Battle to expressly assert rights under the FMLA or even mention the FMLA. 29 C.F.R. § 825.303(b). By requesting this leave, Battle engaged in a protected activity.

89.    Defendant took an adverse employment action against Battle when it demoted Battle and caused Battle to lose a favorable employment status and to suffer a monetary loss.

90.    Because Lt. Mammarella was told by Battle that she needed leave in order to take care of her husband for his emergency hernia surgery, Defendant had knowledge of Battle's engaging in the protected activity of requesting said leave.

91.    On September 7, 2011—just five days after Battle returned from leave for taking care of her husband—Defendant gave Battle an unfavorable performance review, citing a supposedly "seriously low" leave balance as the reason for her unfavorable rating.    On November 17, 2011, Defendant once again criticized Battle for her low leave balances, even though she had taken only three days off since September 7, 2011. On November 30, 2011, Lt.

- 22 -

Mammarella recommended to Deputy Chief Aden that Battle's probationary period be extended for 90 days, citing to her leave usage as the reason. On December 14, 2011, Deputy Chief Aden decided to demote Battle—rather than extend her probationary period—due to the low performance ratings Lt. Mammarella had given Battle as a result of the FMLA qualifying leave she had taken.

92.     Defendant's demotion of Battle was causally connected to Battle's protected activity.

93.     Defendant unlawfully retaliated against Battle for her requesting and taking FMLA qualifying leave.

94.     As a direct and proximate result of Defendant's unlawful, intentional and willful actions, Battle has suffered a loss of wages.

### COUNT III: VIOLATION OF TITLE VII

95.     Battle re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

96.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, provides that, "It shall be an unlawful employment practice for an employer...to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (2013).

97.     An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).

- 23 -

98.     The term "person" includes one or more individuals, governments, governmental agencies, [and] political subdivisions.... 42 U.S.C. § 2000e(a).

99.     Defendant City of Alexandria is an employer for Title VII purposes, as it is a municipal corporation organized under the laws of the Commonwealth of Virginia whose industry affects commerce and who employs fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

100.    The term "employee" "means an individual employed by an employer." 42 U.S.C. § 2000e(f). Battle is an employee, as she is an individual employed by Defendant, the City of Alexandria.

101.    Sergeant Robert Smith, a male, was promoted to Sergeant on January 8, 2011— the same day that Battle was promoted to Sergeant. During his 12-month probationary period following his promotion to Sergeant, Sergeant Smith was out on extended paternity leave, as well as leave for a vacation. Sergeant Smith was released to full Sergeant status following the completion of his probationary period. Sergeant Smith did not receive an extension of his probationary period or a demotion as a result of the extended leave he took during his probationary period.

102.    Another male probationary sergeant (Sergeant Seckler) regularly took up to two weeks of leave at a time to care for his children while his wife was out of the country on business. Yet, he was not threatened with an extension of his probationary period or with demotion.

103.    Sergeant Seckler was promoted to Sergeant one day after Battle was demoted. After he was re-assigned to Lt. Mammarella six months into his probationary period, Sergeant Seckler received an unfavorable performance evaluation. However, rather than having his

- 24 -

probationary period be extended, or being demoted, Captain Bartlett re-assigned Sergeant Seckler to another Lieutenant.

104.    Additional differences in treatment between males and females by Defendant can be shown by the fact that, when Battle interviewed for a law enforcement position, she was specifically asked how she planned to care for her children, considering that she was a single mother at the time and the position for which she was applying required shift work. Another female officer was asked what her husband and children thought of her becoming a police officer. The interview panels did not ask these questions of male candidates who listed children in their background packet, nor did the interview panels ask the male candidates questions about child care.

105.    Similar to the low marks Battle received for reliability in her performance evaluation, other female officers who have children were told by the Alexandria Police Department that they were becoming unreliable, or they had changed after they had children. These female officers are hesitant to ask for leave when the request is related to their children; yet male officers are seen as "good dads." By way of a comparative example, when the child of a female detective and a male officer became sick, the male officer asked his supervisor for leave to take care of the child. The supervisor asked the male officer why his wife (the female detective) could not take care of the child. The supervisor of this same female detective told the detective that the supervisor thought the detective would be happier just staying at home and taking care of her children.

106.    Defendant discriminated against Battle on the basis of her gender when it demoted her because she took leave to take care of her husband. Defendant does not demote

male sergeants when those male sergeants take extended periods of leave during their probationary period or leave for family related reasons.

107.   Battle filed a Charge of Discrimination with Alexandria Office of Human Rights which was cross-filed with the U.S. Equal Employment Opportunity Commission, dated October 12, 2012, alleging that the City of Alexandria Police Department committed unlawful gender discrimination in violation of Title VII and the Alexandria Human Rights Ordinance.

109.   As a direct and proximate result of Defendant's unlawful actions, Battle has suffered lost wages, and she has suffered and continues to suffer great emotional pain, suffering, humiliation, inconvenience, mental anguish, embarrassment, loss of enjoyment of life, and stress.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff Battle, by counsel, requests this Court to grant judgment against Defendant for all injuries proximately caused by Defendant's unlawful actions, including, but not limited to:

A.   Enter judgment for Plaintiff against Defendant;

B.   Declare that the conduct of Defendant is in violation of the FMLA and Title VII;

C.   Award Battle full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses, cash awards, loss of retirement savings and benefits, and other remuneration and privileges of employment retroactive to the date of any unlawful action found to have occurred in this case;

D.   Award Battle an additional amount as liquidated damages for Defendant's willful violation of the FMLA;

E.      Award Battle compensatory damages under Title VII for the emotional distress
        injuries and losses that she suffered, in an amount to be determined at trial;

F.      Award Battle pecuniary and out-of-pocket expenses;

G.      Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses
        incurred by Battle as a result of Defendant's actions and inactions, as well as pre-
        and post-judgment interest; and

H.      Order such other equitable and legal relief as the Court deems necessary and
        appropriate.


**A TRIAL BY JURY IS DEMANDED.**


                                    **MISTI BATTLE**

                                    By Counsel:


                                    Valerie A. Chastain

                                    Valerie A. Chastain, Esquire (VSB #70887)
                                    McKinney & Associates, PLLC
                                    1625 Prince Street, Suite 230
                                    Alexandria, Virginia 22314
                                    Office: (703) 717-9428
                                    Facsimile: (877) 590-4777
                                    Email: valeriechastain1@gmail.com


- 27 -